ANTOINE JONAU v. THOMAS FELLOWS and others.

APPEAL from the District Court of the First District, *Buchanan*, J.

*L. Janin*, for the plaintiff.

*L. C. Duncan*, for the appellant.

MORPHY, J. This case is intimately connected with, and grows out of that just decided between the same plaintiff and M. L. H.

Blanchard, A. G. Blanchard, and N. Benoist, on an appeal from the Parish Court. They have been tried together, and, by an agreement of record, the whole transcript of that suit is to be used in this, so far as Benoist and Blanchard are concerned. Thomas Fellows, one of the defendants, having obtained an order of seizure and sale on the four drafts of Auguste Metoyer, accepted by the house of Jonau, Metoyer & Co., and secured by mortgage on property belonging to plaintiff, the latter sued out an injunction to arrest the execution of the same. After setting forth all the circumstances under which the mortgage was executed, and the possession of these drafts obtained by N. Benoist and Blanchard, the petition avers that Thomas Fellows is and was always informed of the circumstances, and that he is not the *bona fide* holder of the drafts, but that, on the contrary, he has combined and confederated with Benoist and Blanchard for the purpose of oppressing the plaintiff, and depriving him of the possession and use of the drafts, which are, and always have been his property. That so far as Fellows is concerned, he holds these drafts under the control and for the account of Benoist and Blanchard, no *bona fide* transfer of them having ever been made to him. That by their vexatious, harassing, and fraudulent attempt to procure Fellows to sue the plaintiff, as he has done, Benoist and Blanchard have greatly injured him in his commercial and private business, and have caused him damage to the amount of $5000; and that Fellows, by combining with them and knowingly lending himself to their oppressive and fraudulent proceedings, has rendered himself liable, jointly and severally with them, in the same amount of damages to the plaintiff. The petition concludes with praying for the damages aforesaid, the sequestration of the drafts sued upon, and the restoration of them to the petitioner, the rightful owner of the same. Thomas Fellows answered separately, denying all the allegations tending to render him liable in damages to the petitioner, and averring that he is the *bona fide* owner of the drafts described in the plaintiff's petition, and hath paid therefor a good and valuable consideration. He prays for the dissolution of the injunction, with such general damages as are allowed by law, and special damages in the sum of $500. Benoist and Blanchard pleaded the general issue. There was a judgment below making

the injunction perpetual, and decreeing the restoration of the drafts to the plaintiff as his property, with costs, and reserving the rights of Fellows against Benoist, if any he has. Fellows has appealed.

The evidence shows that nearly three months before the maturity of the drafts sued upon, the plaintiff had an advertisement inserted in three of the newspapers published in this city, cautioning the public against negotiating them, and that this notice appeared four times, (twice a week,) in both languages. Gourdain, a witness for the plaintiff, testified, that Benoist proposed to him to sue Jonau in his (witness') name on the four drafts in question, telling him that, if he took them, he must make oath that he received them before seeing the advertisement in the papers, which he then exhibited to witness, who recollected having seen it before; that he refused to do this. That Benoist made him several propositions in case the money was recovered of Jonau, and among others, that he would leave the money in witness' hands for one or two years without interest; that after the case of *Jonau* v. *Blanchard and others* was decided in the Parish Court, witness informed Jonau of the foregoing facts, thinking that the matter was finally settled. That the above proposition was made to him several times during three or four days. Witness does not remember that Benoist ever told him that the drafts belonged to him, but he said he could find others who would take them, but that they did not offer sufficient security. That Benoist, at that time, told him how he obtained the drafts, but that he (witness) does not recollect what he said about them. That since the institution of this suit, witness was notified by Benoist to take care not to perjure himself, for if he did he would bring him before the Criminal Court; to which the witness replied, that he would be careful to tell nothing but the truth, and that, had he not believed the affair settled, he would not have said a word to Jonau.

Benit, another witness, declares, that Benoist sent for him and his partner, Gourdain, who are commission merchants, stating that he wished particularly to see them both. They went to his house. Benoist proposed to them to take the drafts for collection, at the same time showing them the notice in the newspapers. Witness told Benoist that he could understand nothing about this

business, and asked him why he did not sue himself on the drafts. Benoist answered that he feared difficulties. That *he* could not recover the money, but that a third person might. Witness remarked to Benoist that he could not take charge of the matter, as the public well knew that his house was not able to discount such an amount. Benoist answered that witness was a *novice*, and that the public had nothing to do with a knowledge of his affairs, at the same time saying, that, in case he took the drafts, he should say that he had taken them long before seeing the notice in the papers. That the conditions proposed were, that a part of the money, when collected, should remain in the hands of his firm. That Benoist told him that Fellows would be charged with the recovery of a portion of the drafts, and witness' house with the balance, &c. With such evidence in the case, Fellows *has not* thought proper to show the good and valuable consideration which his answer avers that he paid for these drafts, amounting to $11,300. He has not even attempted to show, that, in the spring of 1840, he possessed means adequate to such a discount, and the evidence adduced by the plaintiff renders it extremely improbable that he had. It is shown that, although he did some business as an exchange broker, there were several judgments against him for small amounts, which he was unable to satisfy. He declared on several occasions that he had no money, and that whatever property he had was so embarrassed with mortgages, that his judgment creditors could make nothing out of it. The improbability that he really discounted, *bona fide*, these drafts, is not a little strengthened by the circumstance, that he did not, according to the usual course of business in this city, deposit them for collection in one of the Banks, but carefully concealed his possession of them until the very day of their maturity, when they were handed to a notary to be protested, in case the acceptors failed to pay on demand. Upon the whole, we have come to the same conclusion as the judge below, that the real holder of the drafts sued upon was Nicholas Benoist, and that the name of Fellows was used, with his consent, for the purpose of enforcing payment out of the property of Jonau. As it has been decided by the judgment of the Parish Court, this day affirmed, that the drafts in question were held by Benoist and Blanchard tortiously, and without considera-

tion, and that they were the property of Jonau, the judge correctly decreed them to be delivered up to the latter.

*Judgment affirmed.*